[Cite as *Fikri v. Best Buy, Inc.*, 2013-Ohio-4869.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| ERGUN FIKRI, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2013-06-051 |
| | : | O P I N I O N |
| - vs - | | 11/4/2013 |
| | : | |
| BEST BUY, INC., et al., | : | |
| Defendants-Appellees. | : | |

CIVIL APPEAL FROM MASON MUNICIPAL COURT
Case No. CVI00098

Ergun Fikri, 12128 S. Pine Drive, Apt. 295, Cincinnati, Ohio 45241, plaintiff-appellant, pro se

Mannion & Gray Co., L.P.A., Judd R. Uhl, Katherine L. Kennedy, 909 Wright's Summit Parkway, Suite 230, Ft. Wright, KY 41011-2783, for defendants-appellees, Best Buy and Timothy Roberson

**RINGLAND, P.J.**

{¶ 1} Plaintiff-appellant, Ergun Fikri, appeals from the Mason Municipal Court decision granting judgment to defendant-appellee, Best Buy Co. For the reasons discussed below, we affirm the judgment of the trial court.[1]

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

{¶ 2} This action was filed in response to a number of computer-related problems and technical support issues that appellant experienced while a customer at Best Buy. On February 4, 2012, appellant purchased a Toshiba laptop computer from the Best Buy store located in Mason, Ohio. The computer came with a one-year manufacturer's warranty, which was limited to correcting defects in the computer's hardware. In addition, appellant purchased a separate two-year service contract with Best Buy to provide technical support on the new Toshiba computer and his existing Dell computer.

{¶ 3} Appellant began experiencing problems with his Toshiba computer within the first several months of his purchase and contacted Best Buy. On July 16, 2012, Best Buy diagnosed the problem as a corrupt operating system and recommended that his computer be sent to its Louisville, Kentucky center for warranty repairs. Since appellant could not be without his computer at that time, he elected to take the computer home and wait to fix it at a more convenient time.

{¶ 4} On August 16, 2012, appellant returned to the store to have his computer serviced. In the Best Buy service order dated the same day, the service technician noted problems with the internet and also that the computer "makes loud noises on startup and waking from sleep." The service technician at Best Buy also performed a spyware and virus screen, in which he noted that the scan detected nineteen spyware programs. As a result of the problems appellant was experiencing with the computer, Best Buy sent the machine to its Chicago facility which replaced the mother board, HDD hard drive, and Wi-Fi hardware systems. Pursuant to the manufacturer's warranty still in place, appellant was not charged for any of those services.

{¶ 5} On August 28, 2012, appellant received his computer back from Best Buy. Appellant testified at trial that the software and spyware problems were corrected following the replacement of those parts. However, appellant was dissatisfied with the work done and

raised a number of complaints regarding his experience with Best Buy. Appellant alleged that Best Buy negligently or intentionally replaced his Toshiba power cord and battery with a used and defective power cord and battery. He also disagreed with Best Buy's decision to replace the Toshiba hardware, rather than just delete the spyware, which he believed would have corrected the problem. In essence, appellant alleged that Best Buy's actions were motivated by a scheme to harvest component parts for re-use and re-sale for its own pecuniary gain.

{¶ 6} In addition to his complaints regarding the Toshiba computer, appellant also alleged that Best Buy failed to service his Dell computer, which was also covered under the two-year services contract with Best Buy. According to him, Best Buy declined to work on the Dell laptop computer, which was also infected with spyware. That computer was subsequently repaired by Office Depot and billed to appellant.

{¶ 7} On October 29, 2012, appellant filed this action, pro se, in the Mason Municipal Court, Small Claims Division, alleging violations of the Ohio Consumer Sales Protection Act for Best Buy's actions with respect to the Toshiba and the Dell computers. The case was heard before a magistrate on February 6, 2013. The magistrate found appellant failed to establish any theory of liability and entered judgment in favor of Best Buy. The trial court adopted the magistrate's decision. Appellant now appeals the decision of the Mason Municipal Court, raising the following two assignments of error:

{¶ 8} THE TRIAL COURT ERRED IN ITS APPLICATION OF OHIO SALES PRACTICES ACT [sic] 1345.02 AND 1345.03 TO THIS CASE.

{¶ 9} THE TRIAL JUDGE AND THE MAGISTRATE, IN THE LOWER COURT, ERRED IN THEIR FACTS, AS WELL AS THEIR APPLICATION OF 1345.02 AND 1345.03 RESULTING IN THEIR WRONG [sic] VERDICT

{¶ 10} As an initial matter, we note that appellant raises two assignments of error,

- 3 -

which essentially address the same issue. However, in his brief, appellant makes a number of additional arguments unrelated to his assignments of error, but which relate to arguments he raised at trial. Therefore, it appears that appellant is contesting the ultimate decision made by the trial court, and not solely the issues relating to the Consumer Sales Protection Act.

{¶ 11} In light of appellant's pro se status and Ohio's policy that cases should be decided on their merits, we allow pro se litigants "reasonable leeway" in their pleadings so as to decide the issues on the merits, as opposed to the technicalities. *Bramel v. Lawhun*, 12th Dist. Brown No. CA98-03-006, 1998 WL 789640 (Nov. 16, 1998), at *3; *see also Sherlock v. Myers*, 9th Dist. Summit No. 22071, 2004-Ohio-5178, at ¶ 3. However, "a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that he remains subject to the same rules and procedures to which represented litigants are bound. He is not given greater rights than represented parties, and must bear the consequences of his mistakes. *Murphy-Kesling v. Kesling*, 9th Dist. Summit No. 24176, 2009-Ohio-2560, at ¶13.

{¶ 12} This case was adjudicated after a full hearing in the Mason Municipal Court. As an appellate court, our review of a trial court's decision is limited to whether the judgment is against the manifest weight of the evidence. *Jones v. Homes*, 12th Dist. Butler No. CA2012-07-133, 2013-Ohio-448, ¶ 24. The Ohio Supreme Court has confirmed that when reviewing the manifest weight of the evidence, an appellate court conducts the same analysis in both criminal and civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. As such, we weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Id.* at ¶ 20, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 13} If the evidence presented to the trial court is susceptible to more than one interpretation, we are bound to give it the construction that is consistent with the trial court's judgment and finding of facts. *Jones v. Holmes*, 12th Dist. Butler No. CA2012-07-133, 2013-Ohio-448, ¶ 24. A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and the evidence submitted before the trial court. *Artisan & Truckers Cas. Co. v. JMK Transp.,* L.L.C., 12th Dist. Clermont No. CA2013-01-004, 2013-Ohio-3577, ¶ 25. The underlying rationale of this deferential standard rests with the understanding that "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Mike Castrucci Ford Sales, Inc. v. Hoover*, 12th Dist. Clermont No. CA2007-02-022, 2008-Ohio-1358, at ¶ 19, quoting *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 14} The thrust of plaintiff's action involves Best Buy's alleged violation of the Ohio Consumer Sales Protection Act. The CSPA provides, "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A); *Smedley v. Drug Mart, Inc.*, 12th Dist. Fayette No. CA2010-05-010, 2010-Ohio-5665, ¶ 18. The CSPA generally defines "'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, at ¶ 10, quoting *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, at ¶ 24. A nonexhaustive list of practices defined as "unfair" or "deceptive" is contained in R.C. 1345.02(B). *Schneble v. Stark*, 12th Dist. Warren Nos. CA2011-06-063, CA2011-06-064, 2012-Ohio-3130, ¶ 47.

{¶ 15} At trial, appellant testified on his own behalf as to the problems he experienced with both his Toshiba and Dell computers. He testified that he had purchased his Toshiba computer from Best Buy, and elected to put both his Toshiba computer and his Dell computer under the service contract with Best Buy. He also testified as to the defects associated with both computers, the potential causes of those defects, the hardships he experienced in resolving those issues, as well as his own theories accounting for Best Buy's actions. Matthew Konn, the general manager of the Best Buy store located in Mason, Ohio testified on behalf of Best Buy. His testimony largely related to the standard practices and procedures of the company.

{¶ 16} After considering the evidence presented, the trial court concluded that appellant failed to prove his case by a preponderance of the evidence. Based on our review of the record, there is competent, credible evidence to support the trial court's factual findings and its decision was not against the manifest weight of the evidence. Accordingly, we affirm the judgment of the trial court.

{¶ 17} Appellant alleges three different acts under his first assignment of error, which he believes constitute "unconscionable" or "deceptive" actions under the CSPA. Namely, appellant points to the number of defects in the computer that he purchased, an allegation that Best Buy ordered replacement parts under his manufacturer's warranty in order to further a "harvesting" scheme, and the failure of Best Buy to inform him about the spyware that was found on his computer. In its decision, the trial court briefly summarized appellant's testimony, which "included theories of unnecessary replacement parts, a suspicion that Best Buy had returned a defective power cord to him so that he would have to buy a new one, and a Wikipedia description of Spyware. Further, his only other testimony presented for unfair or deceptive sales practices were other customer reviews with the Better Business Bureau."

{¶ 18} With respect to the quality of his computer, appellant first argues that the

definition of "deception" under R.C. 1345.02 is met in the present case based on the "magnitude and total number of defects" associated with his laptop. The trial court heard appellant's testimony as to the numerous problems that he experienced with his computer and the steps taken to resolve the issue. Appellant testified at length about the stress, loss of business productivity, and numerous trips to the store that he had to make in order to resolve the issue.

{¶ 19} However, merely because a customer experiences difficulties with a product after its purchase does not invariably mean that the CSPA was violated. The burden of proof is on the party bringing the action to prove the facts necessary for his case by a preponderance of the evidence. *Adaptable Custom Homes, Inc. v. Affordable Luxury Homes, Inc.*, 12th Dist. Clinton No. CA91-05-008, 1992 WL 29236 (Feb. 18, 1992). In this case, appellant failed to present any evidence that the computer problems were caused by Best Buy. To the contrary, Best Buy proffered testimony showing that spyware can come onto any computer through a number of ways, including simple web browsing. After having considered all of the evidence introduced on this matter, we find the trial court's decision that there was no violation of the CSPA based on the defects in the computer was not against the manifest weight of the evidence.

{¶ 20} Appellant next asserts that Best Buy engaged in unconscionable sales practices under R.C. 1345.02(B)(7) in the sale of his laptop by unnecessarily replacing component parts of his computer when they were not needed. In support, appellant entered a work order into the record, which shows handwritten notes by a Best Buy employee indicating that Best Buy conducted a spyware and virus scan of his computer, but failed to remove the spyware that was found. Appellant alleges that Best Buy chose to obtain replacement parts under his warranty with the manufacturer, instead of simply deleting the problematic spyware software. Appellant's theory is that Best Buy took these actions in order

to further a self-dealing, "harvesting" arrangement whereby Best Buy would order unnecessary replacement parts from a manufacturer under the manufacturer's warranty and then re-use those component parts in their own operations. He attempts to support this allegation with another exhibit that states in the fine print of a service document that Best Buy is authorized to "[u]se new or rebuilt replacement parts that perform to the factory operational specifications of the product."

{¶ 21} Best Buy denied those allegations at trial, offering testimony that the notes made by the employee were only preliminary notes and did not reflect the actual removal of spyware. Best Buy also introduced testimony that the spyware was removed at a later time. Other than appellant's own theory, there was no evidence placed in the record demonstrating that Best Buy was involved in an illegal harvesting scheme. As a result, the trial court weighed the conflicting evidence of the two sides and found that appellant had not proven his case by a preponderance of the evidence. Based on our review of the record, we find the trial court's conclusion that Best Buy did not violate the CSPA is supported by competent, credible evidence and is not against the manifest weight of the evidence.

{¶ 22} Finally, appellant contends that the trial court erred in not finding Best Buy's actions unconscionable because they allegedly failed to inform him of the existence of spyware until ten days after it was discovered on his computer. However, appellant failed to present any evidence demonstrating why this constitutes an unconscionable action or that a ten-day time period was unreasonable or excessive. Accordingly, the trial court's decision finding that appellant failed to prove a violation of the CSPA was not against the manifest weight of the evidence.

{¶ 23} Under appellant's second assignment of error, he raises three additional issues concerning the trial court's decision.

{¶ 24} First, appellant argues that his power cord and battery were switched and

replaced while the computer was in the possession of Best Buy. He contends that the trial court erred when it concluded that Best Buy was not liable for the damages associated with the purchase of a new power cord. Appellant testified that, when he gave the computer to Best Buy, the power cord and battery were new and undamaged. However, he claimed that when the computer was returned to him, the power cord and battery both needed to be replaced. He alleged that Best Buy was responsible for this because "a power cord does not wear out in six months, let alone in ten days when it was in their possession." Accordingly, appellant argued that Best Buy had intentionally or negligently exchanged his power cord with this defective power cord.

{¶ 25} At trial, Best Buy introduced testimony showing that there were internal procedures in place for preventing a switch in component parts. According to testimony offered at trial, Best Buy places stickers on each customer item to ensure that the proper component parts stay together. Best Buy also introduced testimony that the power cord appeared to be damaged as a result of normal wear and tear. The trial court concluded that appellant failed to demonstrate by a preponderance of the evidence that the items were actually switched. Our review of the record demonstrates sufficient, competent and credible evidence to support the trial court's decision. Accordingly, the trial court's decision was not in error.

{¶ 26} Next, appellant argues that the trial court erred in finding that there was no breach of contract with respect to the service contract covering both his Toshiba and Dell computers. Under the breach of contract argument, appellant raises a number of issues including: failure to install printer drivers, failure to remove spyware, failure to service the Dell computer, as well as an allegation that work was performed on his computer without his consent.

{¶ 27} The trial court concluded that appellant failed to establish that Best Buy

breached any contract. While the trial court found that appellant had purchased a two-year service contract with Best Buy, the court determined that appellant did not introduce sufficient evidence to show that Best Buy breached that service contract. After careful consideration, we cannot conclude that the trial court erred in finding that Best Buy did not breach its service contract with appellant. The record demonstrates that Best Buy serviced appellant's computers multiple times pursuant to the service agreement in place between the parties. Appellant testified that the software issue is now corrected on both computers. While appellant ultimately took his Dell laptop to another store to be fixed, he did not present any evidence showing that Best Buy refused to honor its service contract. Simply, as noted by the trial court, appellant's "trial evidence provided no coherent explanation linking his Dell computer to a claim for damages against Best Buy." Accordingly, there was no error in the trial court's determination that Best Buy did not breach the service contract with appellant.

{¶ 28} Finally, appellant argues that the trial court erred in deciding that his damages were not proven or justified. While a prevailing party is entitled to damages under the CSPA, it is incumbent on the plaintiff to prove by a preponderance of the evidence that a prohibited act has occurred. Since plaintiff failed to prove that he is entitled to recovery for the alleged violations by Best Buy, he is not entitled to any money damages.

{¶ 29} Accordingly, appellant's second assignment of error is overruled.

{¶ 30} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.