[Cite as *In re T.L.C.*, 2023-Ohio-3929.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

IN RE: :

    T.L.C., et al. : CASE NOS. CA2023-03-031
                                             CA2023-04-034

                                           :

                                           : O P I N I O N
                                                 10/30/2023
                                           :

                                                 :

                                                 :

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 22-C000193 and 22-C000194

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten Brandt, Assistant Prosecuting Attorney, for appellee.

Kevin D. Hughes, for appellant.

Mother, pro se.

Father, pro se.

**S. POWELL, P.J.**

{¶ 1} Appellant ("Grandmother") appeals the decisions of the Warren County Court of Common Pleas, Juvenile Division, dismissing her two motions seeking to obtain legal custody of her two grandchildren, Tommy and Allie, upon finding both motions moot given

that permanent custody of the children had since been granted to Warren County Children Services ("WCCS").[1]  For the reasons outlined below, we affirm the juvenile court's decisions.

**Facts and Procedural History**

{¶ 2}  On November 18, 2022, Grandmother filed two motions seeking to obtain legal custody of her two grandchildren, Tommy, born on August 14, 2018, and Allie, born on June 16, 2020.  Grandmother's motions were given Case Nos. 22-C000193 and 22-C000194.  There is no dispute that Grandmother was living with her daughter, the children's mother ("Mother"), at the time she moved for legal custody of the children.  There is also no dispute that, over two years prior to Grandmother filing for legal custody of the children, both children had been removed from Grandmother's care and placed in WCCS' temporary custody due to concerns regarding Grandmother's substance abuse.  This occurred after Grandmother twice tested positive for suboxone, a substance for which Grandmother did not have a valid prescription.[2]  The children's removal from Grandmother's care occurred approximately two weeks after the children had been removed from Mother's care and a safety plan was initiated naming Grandmother as the children's caregiver.  This ultimately resulted in the juvenile court adjudicating both children dependent on November 5, 2020. The children's adjudications were given Case Nos. 20-D000058 and 20-D000059.

{¶ 3}  Upon receiving Grandmother's two legal custody motions, the trial court

---

1. We note that, for purposes of privacy and readability, we will refer to the two children at issue in this case by using the fictitious names Tommy and Allie.  We additionally note that, because this appeal originated with Grandmother filing her two motions for legal custody of the children, WCCS is not a party to this case.

2. "Suboxone is the commercial name for buprenorphine combined with naloxone." *State v. Doles*, 4th Dist. Athens No. 16CA5, 2017-Ohio-437, ¶ 11, fn. 2.  Suboxone is a prescription medication that is used to treat opioid dependence "that works just like an opiate, but it does not have side effects or make a person sick like a long-term opiate user who, notwithstanding the dosage of opiates they take, still experiences pain and cravings." *In re M.W.*, 10th Dist. Franklin No. 11AP-524, 2011-Ohio-6392, ¶ 15.  Suboxone is a schedule III controlled substance.  *See State v. May*, 12th Dist. Warren No. CA2019-01-004, 2019-Ohio-4513, ¶ 25 (noting that suboxone is a schedule III controlled substance).

issued decisions in both cases staying the proceedings until after the children's "abuse/neglect/dependency" cases could reach their conclusion. This included the juvenile court needing to decide the two pending motions for permanent custody that WCCS had filed on October 17, 2022. The juvenile court held a two-day hearing on WCCS' permanent custody motions on January 23 and February 7, 2023. During this hearing, the juvenile court heard testimony from a total of eight witnesses. This included testimony from both Mother and the children's father ("Father"), as well as from the children's foster mother. Shortly thereafter, on February 16, 2023, the juvenile court issued separate decisions in Case Nos. 20-D000058 and 20-D000059 granting permanent custody of the children to WCCS. In so doing, the juvenile court found the children's only chance at stability was if they were placed in the permanent custody of WCCS. One week later, on February 23, 2023, the juvenile court issued decisions in Case Nos. 22-C000193 and 22-C000194 dismissing Grandmother's two legal custody motions as moot given that WCCS since obtained permanent custody of the children.

{¶ 4} On March 2, 2023, Mother filed a notice of appeal from the juvenile court's decisions granting permanent custody of the children to WCCS. Approximately three weeks later, on March 22, 2023, Grandmother filed a notice of appeal from the juvenile court's decisions dismissing as moot her motions for legal custody of the children. Several months later, on August 8, 2023, this court issued a decision affirming the juvenile court's decisions granting permanent custody of the children to WCCS. *In re A.C.*, 12th Dist. Warren Nos. CA2023-03-023 and CA2023-03-024, 2023-Ohio-2735. In so holding, this court noted that Mother had an unhealthy, "codependent relationship" with Grandmother. *Id.* at ¶ 31. This court also noted that, according to the testimony offered by Mother at the hearing held on WCCS' motions for permanent custody, Grandmother was "struggl[ing] with drug use at the

- 3 -

time of the permanent custody hearing." *Id.*

### Grandmother's Appeal and Single Assignment of Error

**{¶ 5}** Grandmother's appeal now properly before this court for decision, Grandmother has raised one assignment of error for review. In her single assignment of error, Grandmother argues the juvenile court erred by dismissing her two legal custody motions as moot. To support this claim, Grandmother argues the juvenile court violated her procedural due process rights by staying the proceedings on her motions until after the children's "abuse/neglect/dependency" cases could reach their conclusion. This is because, according to Grandmother, the principles underlying her procedural due process rights required the juvenile court to give her an opportunity to be heard and present evidence in support of her legal custody motions before the juvenile court could grant permanent custody of the children to WCCS. We disagree.

**{¶ 6}** "The fundamental requisites of due process of law in any proceeding are notice and the opportunity to be heard." *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 17. This we can all agree. Grandmother, however, was not a party to either of the children's permanent custody cases. Grandmother had also never expressly moved to intervene in the children's permanent custody cases under Civ.R. 24(B). "The requirements of procedural due process only apply to protected liberty and property interests." *CT Ohio Portsmouth, L.L.C. v. Ohio Dept. of Medicaid*, 10th Dist. Franklin No. 19AP-588, 2020-Ohio-5091, ¶ 29. "There is no question that parents have a fundamental and constitutionally protected liberty interest in choosing how to manage their own children." *In re Skinner*, 4th Dist. Adams No. 93CA547, 1994 Ohio App. LEXIS 1323, *6 (Mar. 23, 1994).

**{¶ 7}** A child's grandparents, however, do not have a fundamental and constitutionally protected liberty interest in choosing how to manage their grandchildren "as

that would interfere with those rights already vested in the parents." *Id.* This holds true even though the grandparents hold a close blood relation to their grandchildren. This is because, as noted by the Ohio Supreme Court, "[t]he law does not provide grandparents with inherent legal rights based simply on the family relationship." *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, ¶ 9. Therefore, because the requirements of procedural due process only apply to protected liberty and property interests, something which grandparents do not inherently have with respect to their grandchildren, the principles of procedural due process did not require the juvenile court to give Grandmother an opportunity to be heard and present evidence in support of her two motions for legal custody before it could grant permanent custody of the children to WCCS. Grandmother's claim otherwise lacks merit.

{¶ 8} Grandmother also argues the juvenile court erred by not, at the very least, treating her two motions for legal custody of the children as Civ.R. 24(B) motions to intervene in the children's underlying permanent custody proceedings. Civ.R. 24(B) sets forth the rule regarding permissive intervention and states, in pertinent part, that upon timely application, "anyone may be permitted to intervene in an action * * * when an applicant's claim or defense and the main action have a question of law or fact in common." To support this claim, Grandmother argues that the juvenile court "certainly could have" accepted her legal custody motions as motions to intervene brought pursuant to Civ.R. 24(B) given her clear interest in obtaining custody of the children.

{¶ 9} Grandmother similarly argues, without any supporting authority, that the juvenile court could have "simply joined" the four cases together—the two legal custody cases proceeding under Case Nos. 22-C000193 and 22-C000194 with the two permanent custody cases proceeding under Case Nos. 20-D000058 and 20-D000059—and "allowed

[Grandmother] to be heard."  Grandmother argues that either option would have been the appropriate way for the juvenile court to proceed when deciding her motions, by giving her "some level of courtesy" as a pro se litigant, especially when considering that the permanent custody of her grandchildren was at stake.  However, although we generally agree that there were other routes the juvenile court could have taken when deciding how to proceed with Grandmother's motions, which includes consolidating all four cases together under one case number, the juvenile court did not err by proceeding in the manner that it did.  We reach this conclusion for two reasons.

{¶ 10} First, there can be no dispute that Civ.R. 24(B) requires a motion seeking permissive intervention be timely filed.  In this case, however, even if we were to assume the juvenile court should have construed Grandmother's legal custody motions as motions to intervene, Grandmother filed those motions on November 18, 2022.  This was approximately one month after WCCS had already moved for permanent custody of the children, and over two years since the children were adjudicated dependent.  The time for Grandmother to move to intervene in the children's permanent custody cases had well since passed and any such motions that Grandmother may have filed seeking to intervene would have properly been denied as untimely.  *See State ex rel. Bell v. London*, 12th Dist. Madison Nos. CA2010-11-027 and CA2010-11-029, 2011-Ohio-3914, ¶ 66-68 (noting the factors to be considered when determining the timeliness of a Civ.R. 24[B] motion to intervene include "the point to which the action in which intervention is sought has progressed" and "the length of time between the point at which the party who seeks to intervene knew or reasonably should have known of his interest in the case").

{¶ 11} Second, given its plain language, Civ.R. 24(C) clearly requires a motion to intervene filed under Civ.R. 24(B) "to be accompanied by a pleading, as defined in Civ.R

7(A), setting forth the claim or defense for which the intervention is sought." *In re L.M.*, 12th Dist. Preble Nos. CA2020-12-017 and CA2020-12-018, 2021-Ohio-1630, ¶ 23. In this case, however, neither of Grandmother's two motions, had the juvenile court construed them as such, were accompanied by the necessary pleadings required by Civ.R. 24(C). Grandmother's two motions were instead basic, boilerplate legal custody motions setting forth the various reasons Grandmother believed the children should be placed in her care. This included Grandmother stating in one motion that she believed the children should be placed with her because she has "been clean for 17 years with the help from medication." Grandmother also argued the children should be placed with her because:

> I went thru a home study for CPS and I passed everything except I had my daughter (the baby's mom) living with me. She's been clean and in treatment since this all started. I feel CPS is now playing games with these babys (sic) lives and I need it to stop and allow me to get them so I can give them a stable life with everything they need!

{¶ 12} But, even if this court were to assume Grandmother's claims regarding her sobriety were true, "[t]he failure to comply with Civ.R. 24(C), standing alone, 'is grounds for denying a motion to intervene.'" *In re L.M.* at ¶ 24, quoting *In re Adoption of K.*, 6th Dist. Wood No. WD-18-018, 2018-Ohio-3082, ¶ 9-10. A party's failure to file a pleading in compliance with Civ.R. 24(C) is, in fact, "'fatal to a motion to intervene.'" *Id.* at ¶ 25, quoting *Sutton v. Sutton*, 9th Dist. Summit No. 28393, 2017-Ohio-5559, ¶ 8. Such a result is certainly warranted in this case. *See, e.g., Id.* ("because Grandmother failed to comply with Civ.R. 24[C] when filing either of her two motions to intervene, it would have been proper for the juvenile court to deny Grandmother's motions on that basis alone"); and *Waynesburg Holdings, LLC v. Wells Fargo Bank, N.A.*, 5th Dist. Stark No. 2019CA00015, 2019-Ohio-4764, ¶ 45, ("the trial court properly denied appellants' motion [to intervene] for failure to comply with Civil Rule 24[C] on that basis alone"). To the extent Grandmother claims

otherwise, such argument is meritless.

{¶ 13} In so holding, we note the well-established principle that "[t]his court will not usurp the power of the juvenile court to control its own docket." *In re A.B.*, 12th Dist. Brown No. CA2016-11-021, 2017-Ohio-5776, ¶ 31. We also note that, while it may be true that Grandmother had been proceeding pro se, "litigants who appear pro se 'are held to the same standard as litigants who are represented by counsel.'" *In re A.V.*, 12th Dist. Warren Nos. CA2022-06-046 thru CA2022-06-049, 2022-Ohio-4719, ¶ 29, quoting *Jones v. Nichols*, 12th Dist. Warren No. CA2012-02-009, 2012-Ohio-4344, ¶ 23. This means that pro se litigants, like Grandmother, "are presumed to have knowledge of the law and correct legal procedures so that he or she remains subject to the same rules and procedures to which represented litigants are bound." *Id.*, citing *Fikri v. Best Buy, Inc.*, 12th Dist. Warren No. CA2013-06-051, 2013-Ohio-4869, ¶ 12.

{¶ 14} That is to say, Grandmother was expected, like all pro se litigants before her, "'to abide by the relevant rules of procedure and substantive laws, regardless of [her] familiarity with the law.'" *In re A.V.* at ¶ 29, quoting *Fontain v. H&R Cincy Properties, LLC*, 12th Dist. Warren No. CA2021-02-015, 2022-Ohio-1000, ¶ 26. This holds true even in legal custody proceedings. *See, e.g., In re Z.P.*, 8th Dist. Cuyahoga No. 104395, 2017-Ohio-7397, ¶ 22 (noting that, "[i]n Ohio, pro se litigants are presumed to have knowledge of the law and of correct legal procedure, and are held to the same standard as all other litigants" in an appeal challenging a juvenile court's decision to grant legal custody of a child to the child's grandmother). This would include, for example, Grandmother filing a proper Civ.R. 24(B) motion to intervene that complied with the procedural requirements for filing such a motion as set forth in Civ.R. 24(C). Again, to the extent Grandmother claims otherwise, such argument is meritless.

**Conclusion**

{¶ 15} For the reasons outlined above, and finding no error in the juvenile court's decision dismissing Grandmother's two legal custody motions as moot, Grandmother's single assignment of error lacks merit and is overruled. Therefore, having found no merit to Grandmother's single assignment of error, Grandmother's appeal from the juvenile court's decision dismissing as moot her motions for legal custody seeking to obtain legal custody of her two grandchildren, Tommy and Allie, is denied.

{¶ 16} Judgment affirmed.

M. POWELL and BYRNE, JJ., concur.