[Cite as *In re J.B.*, 2022-Ohio-3895.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| J.B. (DOB 5/12/06) | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| J.B. (DOB 4/29/07) | : | |
| | : | |
| J.B. (DOB 8/15/12) | : | Case Nos. 2022CA00086 |
| | : | 2022CA00087 |
| MINOR CHILDREN | : | 2022CA00088 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:         Appeal from the Stark County Court
of Common Pleas, Juvenile Division,
Case Nos. 2021JCV00694,
2021JCV00695, 2021JVC000697

JUDGMENT:                        Affirmed

DATE OF JUDGMENT:                October 31, 2022

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JAMES B. PHILLIPS                         TY A. GRAHAM
Stark County JFS                          4450 Belden Village Street NW, Suite703
300 Market Avenue North                   Canton, Ohio 44718
Canton, Ohio 44702

*Baldwin, J.*

{¶1} Appellant appeals from the June 1, 2022 Judgment of the Stark County Court of Common Pleas, Family Court Division, terminating his parental rights and granting permanent custody of his three children to Stark County Department of Jobs and Family Services.

## STATEMENT OF THE FACTS AND CASE

{¶2} Appellant is the biological father of J.B. #1 (DOB 5/12/06), J.B. #2 (DOB 4/29/07) and J.B. #3 (DOB 8/15/12).On July 27, 2021, Stark County Department of Jobs and Family Services (hereinafter SCDJFS) filed complaints in three cases alleging dependency and neglect of the minor children. Abuse allegations were also alleged with respect to J.B. #2. A shelter care hearing took place the same day and the trial court ordered that the children be placed in the temporary custody of SCDJFS.

{¶3} On October 21, 2021, allegations of neglect were removed. J.B. #2 was found to be abused while the other two children were found to be dependent. Temporary custody of the children was continued with SCDJFS.

{¶4} On March 18, 2022, SCDJFS filed motions in the three cases seeking permanent custody of the three children. A hearing on the motions was held on May 31, 2022. At the hearing, Lisa Eggenschweiler testified that she was employed by SCDJFS and was the ongoing case worker assigned to all three cases. She testified that while appellant was the father of all three children, J.R. and C.R. were their legal custodians. According to her, two of the children had the same mother while the other child had a different mother.

**{¶5}** Eggenschweiler testified that J.R., the legal custodian, was incarcerated for twenty to twenty-five years for the rape of J.B. #2 and that he could not provide safe care and support for the children. She testified that she did not know C.R.'s location and that C.R. had not visited with the children for a period in excess of ninety days. She further testified that in late November to early December of 2021, a sibling from a prior case alleged that he was sexually abused by C.R. and that the sexual abuse was substantiated. In April of 2022, J.B. #2 alleged that C.R. had participated in sexual abuse of her. She testified that the abuse was substantiated.

**{¶6}** Eggenschweiler testified that C.R. had not done any of her case plan services and had not reduced the risk posed at the time of the initial filing.

**{¶7}** Eggenschweiler testified that appellant had served five years in prison for sexually abusing J.B. #2 and was convicted in 2013 of gross sexual imposition. He was registered as a sex offender. Appellant was released in 2019. Eggenschweiler testified that as part of his case plan services, he was to complete an offender assessment with Melymbrosia. In the report from the assessment, there were concerns that he was in denial and did not take responsibility for the sexual abuse. There was a recommendation made that there be no contact between him and the children until he made significant progress in sex offender treatment. According to her, appellant had not done any sex offender treatment and had denied sexually abusing J.B. #2. She testified that he could not provide any safe care and support for any of the children and that none of the adults in this case had reduced the risks that they posed to the children. The report from Melymbrosia indicated that appellant continued to remain an untreated sex offender. She

further testified that the children had been in the temporary custody of SCDJFS since October of 2021.

{¶8} On cross-examination, Eggenschweiler testified that the report indicated that appellant was a low risk for further deviant sexual activity. She testified that J.B. #2 was placed with J.R. and C.R. when she was five or six years old and that J.R. had been convicted of raping her. The rape, she testified, could date back to the time of placement. Eggenschweiler also testified that C.R. was likely to be charged. On redirect, she testified that appellant went to Melymbrosia after his release from prison for sexually abusing his daughter and that the outcome of the report was that he was an untreated sex offender and should not be around children. She testified that appellant's daughter had been the victim of at least three perpetrators- namely, appellant, C.R. and J.R.

{¶9} At the hearing, appellant testified that he currently had housing and had resided there for two and a half years and that he had full time employment. He testified that no case worker had come out to his residence or requested to come out to his residence. He admitted that he served five years in prison after pleading guilty, but denied that he committed the offense against his daughter. Appellant testified that he completed programs in prison for the whole five years that he was there including a sexual offender class. He also testified that he completed anger management classes, anger awareness classes, victim awareness classes and Bible study programs. He testified that these programs taught him to have empathy and compassion to victims. He testified that since his release in August of 2019, he had led a law abiding life. Appellant also testified that his daughter had been placed with J.R. and C.R. around February of 2013 and that he had not seen his children since February 6, 2013.

{¶10} On cross-examination, appellant testified that he was living in a rental house that was not large enough for three children. He further testified that he had not done one thing since his Melymbrosia evaluation was completed as it relates to sex offender treatment. He testified that he did not commit a sex offense against his daughter.

{¶11} At the best interest portion of the hearing, Eggenschweiler testified that the children were Caucasian and part Latino. She testified that J.B. #2 struggled with mental health and trauma issues and was currently in counseling. She testified that J.B. #3 acted out, lied, was delayed in school and had a lot of issues to overcome. He was receiving counseling. The third child, J.B. #1, was doing better than the other two. Eggenschweiler testified that J.B. #1 and J.B. # 3 were placed together in a foster home and that the foster parents had expressed a willingness to adopt them. She testified that they were very bonded with their foster parents and that their home was appropriate.

{¶12} Eggenschweiler testified that J.B. #2 was in a foster home that was not interested in adoption. She testified that J.B. #2 wanted to be in a normal family and be adopted and that J.B. #2 said that she never wanted to see appellant or J.R. or C.R. again and was afraid of them. She testified that J.B. #2 had no bond with her mother and did not want to have anything to do with her. She further testified that the other two children had no bond with appellant and/or their mother. When asked if permanent custody was in the best interest of the children, Eggenschweiler testified that it was because "[t]hese children all their lives have none(sic) nothing but abuse and neglect and emotional distress. They deserve a loving, stable family that can give them um stability and a home free of abuse."   Transcript at 42.

{¶13} On cross-examination, Eggenschweiler testified that there were currently two different placements for the children. The two boys were together in a licensed foster to adopt family and their sister was in a separate foster home. While her foster home was not interested in adoption, Eggenschweiler testified that the agency had a lot of foster homes that they could consider.

{¶14} The trial court, pursuant to Judgment Entries filed in each case on June 1, 2022, terminated appellant's parental rights and granted permanent custody of the three children to SCDJFS. The trial court found that the children could not and should not be placed with appellant at this time or within a reasonable period of time and that permanent custody was in their best interest.

{¶15} Appellant now appeals, raising the following assignments of error on appeal:

{¶16} "I. THE TRIAL COURT'S JUDGMENT THAT J.B. (DOB 5/12/06), J.B. (DOB 4/29/07) AND J.B. (DOB 8/15/12) CANNOT BE PLACED WITH APPELLANT WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶17} A. THE TRIAL COURT ERRED IN FINDING APPELLEE MADE REASONABLE AND DILIGENT EFFORTS TO PREVENT THE NEED FOR PLACEMENT AND/OR MAKE IT POSSIBLE FOR THE CHILDREN TO RETURN HOME."

{¶18} "II. THE TRIAL COURT'S JUDGMENT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY GRANTING PERMANENT

CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICENCY(SIC) OF THE EVIDENCE."

I, II

**{¶19}** Appellant, in his two assignments of error, argues that the trial court's findings that the children could not and should not be placed with appellant within a reasonable period of time and that appellee made reasonable and diligent efforts to prevent the need for placement and/or make it possible for the child to return home were against the manifest weight and sufficiency of the evidence. Appellant also challenges the trial court's finding that it was in their best interst for permanent custody to be granted.

**{¶20}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978).

**{¶21}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." *Id.*; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." In re Smith, 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991).

Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.*

**{¶22}** An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

**{¶23}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶24}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

**{¶25}** (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child

placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

**{¶26}** (b) the child is abandoned;

**{¶27}** (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

**{¶28}** (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶29}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶30}** In the case sub judice, the trial court found that R.C. 2151.414(B)(1)(a) applied. In order to find that a child cannot be place with either parent within a reasonable

time or should not be placed with the child's parent, a court must consider the factors set forth in R.C. 2151.414(E). Specifically, Section (E) provides, in pertinent part, as follows:

**{¶31}** (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

**{¶32}** (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

**{¶33}** (2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present

time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code; * * *

{¶34} (16) Any other factor the court considers relevant.

{¶35} In the case sub judice, appellant challenges the trial court's finding that appellee made reasonable and diligent efforts to prevent the need for placement and/or make it possible for the child to return home. As is discussed above, there was testimony that the agency's initial concerns in relation to the children related as far back as 2013 regarding sexual abuse of J.B. #2 and physical abuse of her siblings. Appellant sexually abused J.B. #2 and served five years in prison as a result. Appellant was required to register as a sex offender and was required to complete a sex offender evaluation at Melymbrosia and comply with any recommendations. The sex offender assessment raised concerns over appellant's refusal to take responsibility for assaulting his daughter. The examiner found appellant to be an untreated sex offender and recommended that he have no contact with the children until he made progress in sex offender treatment. There was testimony that appellant had not engaged in sex offender treatment as recommended. In addition, while appellant testified at the hearing that he did not sexually abuse his daughter, he admitted pleading guilty to the charge. Moreover, the trial court found that appellant had not had contact with the children since 2013, a period greater than 90 days, and had abandoned them.

{¶36} Based on the foregoing, we find that the trial court's judgment that the children cannot be placed with appellant within a reasonable period of time was not against the manifest weight and sufficiency of the evidence and that the trial court did not

err in finding that appellee made reasonable and diligent efforts to prevent the need for placement and/or make it possible for the children to return home.

**{¶37}** Appellant also challenges the trial court's finding that it was in the best interest for permanent custody to be granted. An agency that seeks permanent custody of a child bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the child's best interest. *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 26.

**{¶38}** R.C. 2151.414(D)(1) sets out a non-exhaustive list of factors the court must consider. R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

**{¶39}** The factors in R.C. 2151.414(E)(7) through (11), which are referred to in R.C. 2151.414(D)(1)(e), involve a parent's having been convicted of or pleaded guilty to specific criminal offenses against the child, the child's sibling or another child who lived in the parent's household; a parent's withholding medical treatment or food from the child; a parent's repeatedly placing the child at substantial risk of harm because of alcohol or drug abuse; a parent's abandoning the child; and a parent's having had parental rights as to the child's sibling involuntarily terminated.

**{¶40}** No one element is given greater weight or heightened significance. *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. R.C. 2151.414(D)(1) does not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors. *In re: A.M.,* 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶33.

**{¶41}** At the best interest portion of the hearing, there was testimony that J.B. #2 had behavioral and mental health issues and was in counseling.  J.B. #3 had a lot of issues and acting out behaviors and was attending counseling. The two male children were placed together in a foster home interested in adoption and were very bonded with their foster parents.  While J.B. #2 was in a different foster home that was not interested in adoption, Eggenschweiler testified that she had conversations with her and that she wanted to be in a "normal family" and to be adopted. None of the children were bonded with appellant and they had expressed fear of him.  There also was testimony that J.B. #1 had obtained employment and was active in school. When asked if permanent custody was in the best interest of the children, Eggenschweiler testified that it was because "[t]hese children all their lives have none(sic) nothing but abuse and neglect and emotional distress. They deserve a loving, stable family that can give them um stability and a home free of abuse."  Transcript at 42. Moreover, the Guardian ad Litem submitted a written report to the trial court recommending that permanent custody be granted to SCDJFS.

**{¶42}** Based on the foregoing, we find that the trial court's judgment that the best interest of the children would be served by granting permanent custody was not against the manifest weight and sufficiency of the evidence.

**{¶43}** Appellant's two assignments of error are, therefore, overruled.

**{¶44}** Accordingly, the judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.